# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRANDON L. NEWSOM,
    Plaintiff,

v.                                    Case No. 19-cv-526

KYLE BIEDERWOLF, NICHOLAS ERDMANN,
and GENE WIERZBA,
    Defendants.

## DECISION AND ORDER

Plaintiff Brandon L. Newsom, a Wisconsin state prisoner representing himself, is proceeding on a claim that the defendants used excessive force against him in violation of the Eighth Amendment. He alleges that defendant Erdmann slammed his hand in his cell's food port door, defendant Wierzba helped Erdmann do it, and defendant Biederwolf told Erdmann and Wierzba to close the trap on the plaintiff's hand. The defendants have moved for summary judgment. As explained below, I will grant the defendants' motion.

## I. STANDARD OF REVIEW

A party is entitled to summary judgment if he shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those under the applicable substantive law that might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248. A dispute over material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*[1]

---

[1] A party asserting that a fact cannot be or is genuinely disputed must do so by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(1) & (4).

## II. FACTS[2]

At all times relevant, defendant Nicholas Erdmann was employed by the Wisconsin Department of Corrections (DOC) as a Correctional Officer II at Kettle Moraine Correctional Institution (KMCI). ECF 36, ¶ 2. Defendants Gene Wierzba and Kyle Biederwolf are employed by the DOC as Sergeants at KMCI. *Id.*, ¶¶ 3–4.

On January 4, 2019, the plaintiff was placed on a "Trap Box" restriction for one month. *Id.*, ¶ 5. This meant that the port or trap into the cell door was secured by a red box that is placed over it outside the cell that serves to keep an inmate secure while staff is placing restraints on his wrists.[3] *Id.* On January 26, 2019, while working second shift, the defendants were aware of an incident earlier in the day in which the plaintiff had held his trap open so that staff could not close it. *Id.*, ¶ 6. While making rounds for the 4:40 count, Erdmann noticed the plaintiff was not at his cell door as required. *Id.*, ¶ 7. He went to try to close and secure the red box lid properly so there would not be any security issues. *Id.*

According to the defendants, as Erdmann pushed down on the lid, he realized a sheet had been jammed through the holes of the locking mechanism, preventing it from being properly closed. *Id.*, ¶ 8. The plaintiff then returned to the front of his cell and put his hands through the trap, opening the red box lid again. *Id.* Erdmann then left to perform other duties. According to the plaintiff, Officer Erdmann forcefully pushed down on the trap on the plaintiff's right hand while it was sticking out. ECF 47, ¶ 8.

It is undisputed that Officer Erdmann began to pass out dinner meal trays. ECF 36, ¶ 9. When he got to the plaintiff's cell, he closed the lid of the red box and tried to use another

---

[2] Facts are taken from the defendants' Proposed Findings of Fact (ECF 36) and the plaintiff's Response to Defendants' Proposed Findings of Fact (ECF 47). The defendants have also submitted security camera footage (ECF 40-3), however the camera is situated at the end of the hall opposite the plaintiff's cell and provides only limited value beyond confirming the general sequence of events.

[3] The plaintiff disputes this, saying the box is for giving items to inmates. ECF 47, ¶ 5.

sheet he brought with him to temporarily secure the trap so that he would have time to remove the sheet jammed in the lock. *Id.* Once the plaintiff realized Erdmann was attempting to remove the sheet in the lock, he put his hands in the trap and began to push back on the red box lid, which Erdmann did not anticipate. *Id.*, ¶ 10. He did not let go of the lid because he thought there was a possibility of it hitting him if he released it suddenly. *Id.*

When Sgt. Biederwolf saw Officer Erdmann attempting to tie the sheet around the red box and struggling to keep the door closed, he began listening to the interaction through the intercom inside the plaintiff's cell because the plaintiff is known to be assaultive and problematic and had taken his red box hostage once prior to this incident. *Id.*, ¶ 11. Erdmann radioed for Sgt. Wierzba to assist him, as officers are trained to do when they need to gain compliance from an inmate in a physical altercation. *Id.*, ¶ 12. According to the defendants, Wierzba arrived while Erdmann was attempting to hold the red box lid shut. *Id.*, ¶ 13. Neither could get the sheet around the red box to secure the lid because of how hard the plaintiff was pushing on it. *Id.* The plaintiff disputes this, stating that when Wierzba arrived, he joined Erdmann in applying unnecessary force on his hand. ECF 47, ¶ 13.

Next, according to the defendants, the plaintiff was able to push his hand or fingers part way up through the red box and outside the lid. ECF 36, ¶ 14. Officer Erdmann and Sgt. Wierzba heard him say "my hand." *Id.* Sgt. Biederwolf also heard the plaintiff say "ow." *Id.* As soon as the plaintiff said this and Officer Erdmann noticed his fingers through the lid, he said "stop" to Sgt. Wierzba, let go of the lid and the sheet, and stepped away from the cell so the plaintiff would not get injured. *Id.* The plaintiff disputes this and states that Erdmann and Wierzba were aware that the plaintiff's hands were being smashed in the trap. ECF 47, ¶ 14. The plaintiff states that Erdmann said, "Fuck it" and then both walked off. *Id.* It is undisputed that as Wierzba and Erdmann were leaving the plaintiff's cell front, the plaintiff

3

threw an object out at them. ECF 36, ¶ 15. Wierzba and Erdmann then finished meal pass and exited the wing. *Id.*, ¶ 16. During this interaction Sgt. Biederwolf did not tell Erdmann to stop. *Id.*, ¶ 17. He realized later it would be considered a reactive use of force, but at the time of the incident he did not. *Id.* According to the defendants, the plaintiff did not report any injuries to Sgt. Biederwolf at that time. ECF 36, ¶ 18. According to the plaintiff, he yelled to Erdmann and Wierzba that he needed medical care, but they ignored him. ECF 47, ¶ 18.

It is undisputed that at some point, the plaintiff had strung a sheet across to the cell directly opposite him. ECF 36, ¶ 19. Wierzba was told to go to his cell to get him to stop his actions. *Id.* Wierzba observed the sheet connecting the two cells that the plaintiff and the other inmate were swinging, which appeared to be an attempt to knock the fire extinguisher off the wall. *Id.*, ¶ 20. According to the defendants, Wierzba was unable to resolve the situation. ECF 36, ¶ 21. Sgt. Biederwolf arrived and he also tried to talk the plaintiff into dropping the sheet and letting staff close his trap properly. *Id.* The plaintiff asserts that staff did not talk to him about dropping the sheet and letting them close the trap. ECF 47, ¶ 21.

It is undisputed that Wierzba and Biederwolf returned to the sergeant station and advised Lt. Hall of the situation. ECF 36, ¶ 22. Lt. Hall then arrived and gained compliance from both inmates. *Id.* Officer Erdmann spoke to Lt. Hall that night and reported what he knew about the situation. *Id.*, ¶ 23. Erdmann told Hall he made a mistake trying to close the trap. *Id.* He also completed an incident report. *Id.*

The plaintiff reported injuries to his hands when speaking with Lt. Hall. ECF 36, ¶ 24. It is undisputed that the plaintiff was then removed from the cell so Sgt. Ebben could take pictures of his arms. *Id.*, ¶ 25; ECF 47, ¶ 25.[4] Sgt. Biederwolf (also present) observed minor superficial scrapes to his forearms that he believed came from sticking them inside the red

---

[4] This is standard procedure for incidents where injuries may have occurred. ECF 36, ¶ 25.

box. ECF 36, ¶ 25. The plaintiff also had a small scrape on his finger. *Id.* Lt. Hall and Lt. Belongia observed that only one injury on his finger seemed fresh. *Id.* The plaintiff was given soap and band-aids to cover them. *Id.* At his interview on February 26, 2019 regarding the incident, the plaintiff reported that his injuries were two cut fingers on his right hand. *Id.*, ¶ 26. *See also* ECF 47, ¶¶ 25–26; ECF 40-2 (photos taken by Ebben).

On February 2, 2019, an investigation was initiated due to the available information for possible work rule violations. ECF 36, ¶ 27. The possible violations were for Work Rule 2: failure to comply with written policy or procedures for not gaining approval from a supervisor when trying to forcibly secure the lid of the red box; and for Work Rule 3: negligent in performing duties by using poor judgment in attempting to secure the plaintiff's trap without authorization. *Id.* On February 26, Officer Erdmann and other witnesses were interviewed as part of the investigation. *Id.*, ¶ 28. On March 15, Erdmann was issued a non-disciplinary "letter of expectation" that reiterated the expectation that Erdmann would get supervisor approval prior to any use of force. *Id.*, ¶ 29. The investigation determined that no disciplinary action against any of the officers would be taken in relation to the incident. *Id.*

### III. DISCUSSION

The defendants contend that they are entitled to summary judgment because the undisputed evidence demonstrates that they used only a *de minimus* amount of force to end a security theat. ECF 35 at 8–13. They also argue that they are entitled to qualified immunity. *Id.* at 13–15. The plaintiff contends that genuine issues of material fact preclude summary judgment for the defendants. ECF 49 at 6. According to the plaintiff, the allegations in his declaration "portray a completely needless use of force against an inmate who was locked in his cell and was attempting to speak with Captain Campbell about his BMP." *Id.* at 7. The plaintiff also disputes the defendants' position as to qualified immunity. *Id.* at 7–8.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "unnecessary and wanton infliction of pain" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Where excessive force is alleged, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Factors in determining whether the use of force was wanton and unnecessary include "the extent of the injury suffered," "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Id*. at 9. In *Outlaw v. Newkirk*, 259 F.3d 833, 834 (7th Cir. 2001), a prisoner alleged that a correctional officer violated his rights under the Eighth Amendment by "slam[ming] [his] hand in the cuffport hatch, causing severe pain, swelling and bruising." The Seventh Circuit found that the minor injury sustained by the inmate was insufficient to sustain his claim, even assuming the prisoner's story that the officer slammed the cuffport door on his hand with malicious intent to harm him. *Id.* at 839–40. The court explained that a "rational jury could draw one of only two possible conclusions: that the incident was an accident, or that [the officer] deliberately and perhaps unnecessarily applied a relatively minor amount of force to achieve a legitimate security objective" and that "[n]either scenario would involve a use of force that was 'repugnant to the conscience of mankind.'" *Id.* at 839. Thus, even if a jury found the officer's action an unnecessary use of force, "the minor nature of the injury coupled with the absence of any other indicia of malice on [the officer's] part would force us to conclude that it does not rise to the level of a constitutional violation." *Id.* at 840.

Based on these facts and the applicable law, no reasonable fact finder could conclude that unconstitutional excessive force was used against the plaintiff. The plaintiff explains that he was holding his trap box open in an attempt to speak with Captain Campbell about his "BMP." ECF 49 at 2. Whatever his motivation for holding the trap, it is undisputed that the plaintiff created a security threat by jamming a sheet in the lock so that the red box lid could not properly close. Officer Erdmann, and then both Erdmann and Sgt. Wierzba responded to the security threat by trying to close the trap door. Whatever their intent, Erdmann and Wierzba stopped trying to close the trap and walked away when the plaintiff said "ow". *See* ECF 48, ¶ 23. Based on the record, the plaintiff suffered only minor injuries; he alleges that the soap and band-aids he was given were merely to "downplay" his injuries, but he does not allege that what (if any) additional treatment beyond soap and band-aids was necessary. *See id.*, ¶¶ 30–31. *See also* ECF 49 at 5; ECF 40-2; ECF 41-1. And, to the extent that the defendants did not follow policy and procedure, violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983. *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020) (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)).

Accordingly, I will grant the defendants' motion and dismiss this case with prejudice. *See, e.g., White v. Matti*, 58 F.App'x 636, 638 (7th Cir. 2002) (rejecting excessive force claim where it was undisputed that the inmate reached through his trap door in violation of prison rules and suffered only minor injuries). Because I reach this conclusion, I make no finding with respect to the defendants' assertion of qualified immunity.[5]

---

[5] On September 25, 2020, the plaintiff filed a motion to voluntarily withdraw his case due to limited access to the law library. ECF 46. The plaintiff subsequently filed his summary judgment response materials. *See* ECF 47, 48, & 49. The defendants oppose this motion, citing the time and resources they have invested into defending this case. ECF 50. I agree with the defendants; having reviewed and considered the quality of the materials the plaintiff filed in opposition to summary judgment, I conclude that limited access to the law library at his institution does not warrant dismissal without prejudice at this late stage of the case. Accordingly, I will deny his motion.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF 34) is **GRANTED**. This case is **DISMISSED**. The Clerk of Court shall enter final judgment accordingly.

**IT IS FURTHER ORDERED** that the plaintiff's motion to dismiss (ECF 46) is **DENIED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rules of Appellate Procedure 3 & 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or for relief from judgment under Rule 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after entry of the judgment. The court cannot extend either of these deadlines. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 18th day of February, 2021.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge